### Thomas J. Smith *v.* Silas Davis.

A decree of the probate court, appointing a guardian for the defendant as an insane person, which has been reversed on appeal to the Supreme Judicial Court, is not, after such reversal, a sufficient objection to the maintenance of a suit commenced against him after the appeal but before the reversal.

Where A., who had given a promissory note to B.,had subsequently,as an insane person, been placed under the guardianship of the latter, but the guardianship had ceased, and the note was in no way connected therewith, *held* that it was not necessary to the maintenance, by B. against A., of an action on the note, commenced after the termination of the guardianship, for B. to show that his account as such guardian had been settled in the probate court.

Where a complaint was made by a wife against her husband for assault and battery, and a warrant was obtained by her, *held* that the husband was not liable to the attorney employed by the wife, for services and expenditures by him in relation to the complaint and warrant, unless they were necessaries.

An attorney, commencing a suit for a client and performing services for him in the management and settlement of the suit, may recover of his client reasonable compensation for his services, although it may exceed the costs taxable for the latter in the suit.

Assumpsit. The referee, to whom, by agreement of the parties, this action was submitted under a rule of court, having heard the parties on the 24th of Sept. 1864, made the following report :

"Upon the evidence and pleas of the parties, said referee finds the following facts : That the note. described in the plaintiff's specification was given to said Flint by the defendant, and has never been paid, except as appears by the indorsement on the back thereof, and that there is now due on said note the sum of $140.50 ; that said Flint was ap-

pointed guardian of said defendant, as an insane person, by the court of probate for the county of Grafton, in November, 1859 ; that he accepted said trust, and gave bonds as required by law, and that, in July, 1860, he resigned his trust as said guardian, which resignation was accepted by said probate court.    The evidence tended to show that said Flint had given notice for a settlement of his guardian's account, and of his private claim against the defendant, in said probate court, but it did not appear that said account had ever been settled, nor did it appear that this note had ever been allowed to said Flint, on any settlement in said probate court.    About the first day of December, 1861, said Flint delivered the possession of said note to this plaintiff, who, on the 2d day of the same December, commenced this suit thereon.    The plaintiff claimed that he purchased said note at the time it was thus delivered to him by said Flint, and now owns the same ; while the defendant claimed that there was no *bona fide* sale thereof, but that said Flint now owns the same.    But the referee, understanding that it makes no difference in law whether the note was thus actually sold to the plaintiff or not, does not think it material to pass upon that fact.

The defendant claims that this suit can not be maintained against him, because he was under guardianship as an insane person at the time it was commenced.

It appeared, that, after said Flint had resigned, another application was made by the defendant's wife to have another guardian appointed over the defendant, on the ground of insanity, and that, upon her application, such proceedings were had in the probate court in said county ; that in February, 1861, said Davis was decreed an insane person by said court, and, in the March following, one James M. Larned was appointed guardian over said Davis, who accepted the trust and gave bonds as the law requires ; that said Davis appealed from said decree of said probate court, adjudging him insane and appointing a guardian, which appeal was duly entered at the Law Term of the Supreme Judicial Court, but that the appeal was afterward disposed of by agreement of parties, by an entry that the decree of the probate court should be reversed, and it was so decreed.    Whether this decree was thus entered before or after the commencement of this suit, did not appear.    Should the time when this decree was entered prove material, the entries on the dockets of the clerk of the court in said county may be referred to for the proof.    Said Larned gave notice of his appointment according to law, and assumed some control over said Davis's property for a few days in the spring of 1861, but then gave up the control of the same to said Davis, and waited till the question should be settled upon the appeal, and has never acted as guardian since.    This suit was brought, December, 1861.

If, under these circumstances, this suit can be maintained against said Davis, I allowed said plaintiff the amount of said note and interest, amounting to $140.50.

If this suit cannot be maintained, I find on this item for defendant, as also on all the items of account.    But if this suit can be maintained against said Davis, then I find that the first four items in the plaintiff's account were originally entered on the plaintiff's books as against Mrs.

Silas Davis; that Mrs. Davis came to the plaintiff with some of her friends in the fall of 1860, and consulted with him, and procured him to make the two complaints against the defendant, though not on the same day, both of which were signed and sworn to by Mrs. Davis, for assault and battery upon her, she complaining that she feared farther personal violence to herself, and also that her life was in danger; that she procured plaintiff to issue warrants on said complaints; that one was made and handed to Mr. Haines, a deputy sheriff, who was directed to go to Orford and arrest this defendant; that he went and took such assistance as he deemed necessary, but that he could not find the defendant there, and did not arrest him; that he charged for money paid out for expenses, assistance and his own services, the sum of $4.25, which he charged to plaintiff, as was his custom, and that the same has been paid by the plaintiff; that, after Haines had returned this warrant to the plaintiff, either that or the other one made by him was sent to Hanover, where the defendant was found and arrested, and the warrant was returned before a magistrate there, contrary to the directions of this plaintiff, and that said Davis was discharged, the witnesses for the prosecution not appearing against him. During the autumn of 1860, Mrs. Davis made her petition to the probate court to have her husband decreed an insane person, and for the appointment of a guardian; the plaintiff was employed by her in that matter, and, when an order of notice was obtained for a hearing on that petition, the plaintiff handed this order to Mr. Haines, who served the same on this defendant and charged his fees, thirty-three cents, to the plaintiff, who has paid the same, which is the third item in the plaintiff's account. The plaintiff charged the sum of $2.50, the fourth item in his account, for advice and assistance in the proceedings upon the complaints and warrants, and I find that these services were rendered and procured to be performed by Haines, in good faith by this plaintiff, for Mrs. Davis, at her instance and request. Is the defendant in law liable for these services thus procured by his wife? If he is thus liable for any or all of these services, and any suit can be maintained against him on the grounds before stated, then I find for the plaintiff for all such of these items as the defendant is liable in law to pay.

In regard to the fifth and sixth items of account in the plaintiff's specification, I find that plaintiff was employed by the defendant in the summer of 1861, to commence a suit against one Allen for him; that plaintiff, not knowing the state of the proceedings in relation to the guardianship over defendant, brought the writ in the same way the charge appears in the specification; that said defendant gave directions to the officer in regard to attaching property; that, near the last of September, 1861, Allen and said Davis met, and that Smith, at Davis's request, conferred with them, and assisted them in adjusting their differences, and that a settlement was finally effected, and that Allen paid over to said plaintiff, for said Davis, the sum of $660.41, (that being the amount finally agreed on by the parties,) with the taxable costs for writ and service; that plaintiff charged the defendant with his services in assisting about the settlement, and also one per cent. on the money collected, which are the fifth and sixth items in the plaintiff's account.

Defendant claims that no such charges as these can be legally made against him, as client, by his attorney, after his taxable costs for the writ and service have been paid. I find the sums charged were reasonable in amount, if any such charges can properly be allowed.

Prior to October 1, 1861, or upon that day, said plaintiff had paid over to the defendant six hundred dollars of the money collected of said Allen, for portions of which, as it had been paid from time to time, plaintiff took the defendant's notes, not bearing interest. On said 1st day of October, 1861, the plaintiff tendered to the defendant what notes he held against him for portions of this Allen money, and also the account contained in the first four items in the plaintiff's specification, made out as against said Davis, and receipted in full, and of a sum of money sufficient with these notes and this account, thus receipted, to make up the sum of $660.41, which said Davis refused to accept, upon the ground that he was not liable to pay and would not allow any thing for the services procured by his wife, as above stated, and thereupon said Davis demanded of the plaintiff the whole amount of money collected of Allen, except what he had already received, which the plaintiff refused to pay, except as he had tendered it, that is, by deducting the amount of his account, and receipting his bill, as above stated. When the plaintiff made the tender to the defendant, as above stated, he said to the defendant that if he accepted the tender, and allowed his account for the services procured by said Davis's wife, he should say nothing about his charges for services and commission in the Allen suit, but that if he did not accept the tender, he (plaintiff) should recover those charges in the Allen suit of him if he could.

The seventh item in the plaintiff's account I disallow.

The defendant does not appear or plead by guardian in this suit, but does so either in person or by attorney.

The sum claimed by the defendant in his off-set, being $60.41, I allowed to the defendant, provided, upon the facts already stated, he can properly present and have the same allowed to him in person, on account of his being or having been under guardianship, and I submit to the court whether upon these facts any interest can be allowed on this sum. If not, then the balance of this sum of $60.41, after deducting the amount allowed the plaintiff upon his account in his specification, should be deducted from the amount of the note. If interest should be allowed on said off-set, then interest is to be cast upon such balance after deducting the plaintiff's account, from the first day of October, 1861, and the amount thus obtained to be deducted from the note."

*Smith, pro se.*

*Blaisdell,* for defendant.

BARTLETT, J. The only objection made by the defendant to the maintenance of this suit is unfounded in fact, for the defendant was not under guardianship at the time it was commenced, as the appeal in this case had vacated the decree of the probate court made in 1861, which

was reversed by the appellate court at the December Term, 1861, though not till after the commencement of this suit. *Arnold* v. *Sabin*, 4 Cush. 46 ; *Mathes* v. *Bennett*, 21 N. H. 203 ; R. S. ch. 170, sec. 12. Although "a guardian can maintain no action against his ward for money advanced or services rendered as guardian to the ward, until he has settled his guardianship account in the probate court," *Smith* v. *Philbrick*, 2 N. H. 396, *Phelps* v. *Worcester*, 11 N. H. 54, *Davis* v. *Drew*, 6 N. H. 400, yet the note in suit does not fall within that rule or its reason. Flint had ceased to be guardian before he transferred the note to the plaintiff, and it was in no way connected with his guardianship, but had been given to him before he held that trust. The reason of the rule is, that, by the policy of our law, the probate court is made the tribunal for the settlement of all guardianship accounts, R. S. ch. 150, secs. 14, 17 & 31, ch. 152, secs. 4 & 9 ; but the present case does not come within that reason. The inconveniences that would follow from an extension of the rule to cases like the present seem to us greater than any advantage likely to be gained.

Upon the report, as it now stands, the plaintiff cannot recover for the charges in relation to the complaints and warrants, and the petition ; for the referee has not found that any of these expenses were necessaries, as he has neither allowed the items nor reported that there were reasonable grounds for instituting the proceedings. *Morris* v. *Palmer*, 39 N. H. 128 ; *Morrison* v. *Holt*, 42 N. H. 480. See *Chester* v. *Rolfe*, 23 L. & Eq. 100 ; *In re Cumming*, *Ib.* 120 ; *Palmer* v. *Palmer*, 38 N. H. 420 ; *Hospital* v. *Belgrade*, 35 Me. 497 ; R. S. ch. 150, sec. 10.

No question is submitted by the referee or made by counsel as to the defendant's competency to contract for the services charged in the 5th and 6th items of the plaintiff's specification, other than might arise from the appointment of a guardian by the probate court in March, 1861, and that has already been disposed of. Upon this report the plaintiff may recover for these items, as the referee has found them reasonable charges for the services, and the defendant's objection, that no such charges can be legally made, is not well taken. *Wells* v. *Hatch*, 43 N. H. 247. The tender was insufficient because the first four items of the plaintiff's account are not shown to have been due, and therefore we need inquire no further as to it. See *Cary* v. *Bancroft*, 14 Pick. 315 ; *Bank* v. *Howard*, 13 Mass. 235. We can see that other questions might have arisen upon the trial, but as they have not been raised here by the parties or submitted to us by the referee, we have not examined them.

The plaintiff is entitled to recover for the amount of the note and for the 5th and 6th items of his account ; while the defendant, according to the report, is to be allowed upon his set-off $60.41, with interest from Oct. 1, 1861, upon the balance of his set-off over the plaintiff's account thus allowed, if there be any such balance, and there is to be judgment for the plaintiff for the sum remaining due upon such a computation.